```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

UNITED STATES              :
                           :
v.                         :      Criminal No. 3:01cr263 (JBA)
                           :
JOSEPH P. GANIM            :
```

**Ruling on Defendant's Request for Resentencing [Doc. # 269]**

Joseph Ganim requests resentencing following a remand on consent from the Second Circuit Court of Appeals pursuant to United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). See Def. Response to Gov't Mot. for Post-Crosby Proceedings [Doc. # 269]. The Court has received and reviewed written submissions from both the Government and the defendant on the issue of whether re-sentencing is necessary, i.e., whether the original pre-Booker sentence would have been different if the United States Sentencing Guidelines had not been applied mandatorily. See [Docs. ## 269, 272, 273]. For the reasons set forth below, the Court concludes that resentencing is not necessary.

**I.   Factual and Procedural Background**

On March 19, 2003, a jury convicted Ganim, the former mayor of the City of Bridgeport, of sixteen counts of racketeering, bribery, extortion, mail fraud and tax fraud. A sentencing hearing was held July 1, 2003, and judgment entered on July 14, 2003. Defendant was sentenced to a term of 108 months of incarceration on Counts 1, 2, 3 and 7 of the Superseding

1

Indictment (racketeering, Hobbs Act extortion, and bribery) to run concurrently with 60 months on Counts 4-6, 8, 13-14, 16-17 and 19-20 (mail fraud), and 36 months on Counts 22-23 (false tax returns).  He was further ordered to pay a fine of $150,000 and restitution of $148,617.

Ganim's sentence was calculated under the November 1, 1998 Sentencing Guidelines.  The base offense level for bribery was 10, U.S.S.G. § 2C1.1(a), enhanced by two levels for multiple bribes, id. at § 2C1.1(b)(1).  The Court found that the defendant was responsible for an intended loss in excess of $800,000, a figure intermediate between those urged by the Government and the defendant.  Sent. Tr. [Doc. # 278] at 57.  Thus an eleven-level enhancement was applied based on the loss amount.  U.S.S.G. §§ 2C1.1, 2F1.1. The Court also imposed a four-level upward adjustment because Ganim was a leader or organizer of the illegal scheme, under U.S.S.G. § 3B1.2(a).  Sent. Tr. at 62. Additionally, the Court imposed a two-level increase under U.S.S.G. § 3C1.1 for obstruction of justice based on the defendant's materially false testimony at trial.  Id. at 62-63. The total offense level of 29, together with the defendant's criminal history category of I, resulted in a Guidelines range of 87 to 108 months imprisonment.  He was sentenced at the top of the range, reflecting Application Note 5 to U.S.S.G. § 2C1.1, which states that "[w]here the court finds that the defendant's

conduct was part of a systematic or pervasive corruption of a governmental ... office that may cause loss of public confidence in government, an upward departure may be warranted."

Ganim now argues that he is entitled to resentencing because under the mandatory Guidelines regime, this Court was unable to give sufficient weight to his "history and characteristics," 18 U.S.C. § 3553(a)(1), including his "personal life, upbringing, family circumstances, and accomplishments..." Reply Mem. [Doc. # 273] at 6. Second, the defendant also argues that the Court should "tailor a more nuanced and individualized sentence" rather than imposing the Guidelines increases for loss amount and role in the offense. Id. at 9. Third, Ganim argues he should have the opportunity to be resentenced so he may present evidence concerning his "successful efforts at rehabilitation during his incarceration, the continuing hardship endured by his family, and his opportunity to have reflected on the conduct that led to his conviction." Id. at 10. Finally, the defendant argues that this Court should impose a lower sentence because Ganim's sentence was higher than the average sentence imposed on bribery defendants nationwide. Id. at 12-13. The Government opposes resentencing, and argues that the Court correctly calculated and imposed a Guidelines sentence and discounted other individual factors, including Ganim's accomplishments as mayor. Gov't Response [Doc. # 272] at 6-9.

**II.  Crosby Procedure**

Defendant's sentence was imposed and his appeal filed before the United States Supreme Court's decisions in United States v. Booker, 543 U.S. 220 (2005), and Blakely v. Washington, 542 U.S. 296 (2004).  Ganim did not challenge the mandatory application of the Sentencing Guidelines to his case.  Thus, as the parties agree, this remand is governed by the procedures outlined in Crosby.

As interpreted in Crosby, the Booker decision rendered the Sentencing Guidelines advisory, to be considered by the sentencing court along with the other factors in 18 U.S.C. § 3553(a)[1] in arriving at an appropriate sentence.  Crosby, 397 F.3d at 111-12.  The Court of Appeals declined to define "what degree of consideration is required, or, to put it another way,

---

[1] "...The court, in determining the particular sentence to be imposed, shall consider--
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...
(5) any pertinent policy statement--
    (A) issued by the Sentencing Commission ...
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense."
18 U.S.C. § 3553(a)

what weight the sentencing judge should normally give to the applicable Guidelines range," preferring "to permit the concept of 'consideration' ... to evolve as district judges faithfully perform their statutory duties." Id. at 113.  As most recently explained by the Court of Appeals, "[c]onsideration of the § 3553(a) factors is not a cut-and-dried process of factfinding and calculation; instead, a district judge must contemplate the interplay among the many facts in the record and the statutory guideposts." United States v. Fernandez, 443 F.3d 19, 29 (2d Cir. 2006).  Thus under the new sentencing regime, the proper procedure is for the sentencing court first to calculate the applicable Guidelines sentence, including any departures warranted by the Guidelines, and then decide, based on all the factors in § 3553(a), whether to sentence within the Guidelines range or impose a non-Guidelines sentence.  Crosby, 397 F.3d at 111-13.  This standard now governs sentences imposed post-Crosby.

For those cases pending on direct appeal before Booker, the Second Circuit held that the appropriate disposition would "be a remand to the district court, not for the purpose of a required resentencing but only for the more limited purpose of permitting the sentencing judge to determine whether to resentence, now fully informed of the new sentencing regime, and if so, to resentence." Id. at 117 (emphasis in original).  The sentencing court is to base its decision concerning whether to resentence

"on the circumstances at the time of the original sentence...." Id. at 120.

## III. Discussion

### A.   History and Characteristics of Defendant

Under § 3553(a)(1), the Court must consider "the history and characteristics of the defendant." Ganim argues that pursuant to this provision, the Court should now assign significant weight to his record of achievements in his nine years as mayor of Bridgeport. Reply Mem. at 7. He argues that the Court refused previously to consider this evidence, and therefore should reconsider its prior decision.

The Government responds that even before Booker, the Court was free to consider such mitigating information under 18 U.S.C. § 3661, which provides: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Under the Guidelines, the only factors never "relevant in the determination of a sentence" are "race, sex, national origin, creed, religion, and socio-economic status." U.S.S.G. § 5H1.10. The Government notes that during the sentencing hearing, Ganim in fact presented extensive mitigating evidence concerning his record as mayor. See Sent. Tr. 75-91.

At sentencing, this Court considered Ganim's evidence and argument, including numerous letters from members of the community extolling his success in public office.  Sent. Tr. at 64.  The Court agreed with the defendant that "[t]he record that's been developed ... is one of a defendant with energy, charisma, vision, communication and leadership skills that he put to use to move Bridgeport from the brink of bankruptcy into a forward motion."  Id. at 101.  However, the Court concluded:

> [W]hat Joseph Ganim did for the good of Bridgeport really is not to be considered as a factor in the sentencing of a corruption case because that's what a good mayor does. He has a vision, he campaigns on that vision, he uses his personal abilities and talents to persuade voters to use their one precious vote to put him in office so that he can make good on those promises, and the good ones deliver on their promises, or try hard to do that, and they care about all their citizens; they care about the homeless, they care about the affluent.

Sent. Tr. at 101-02.

This reasoning still stands after Booker.  The Court recognizes its duty under 18 U.S.C. § 3553(a)(1) to consider the defendant's history and characteristics, including his accomplishments as mayor, and already has considered this information, but remains persuaded that it should be given a lesser weight in the context of a top elected municipal official who criminally and shamelessly flouts his lawful authority and the public trust.  Ganim was convicted of corrupting the very public office he used for the good works for which he now claims credit.  While he may take credit for at least a portion of

Bridgeport's economic turnaround while he was its chief executive, even more money and opportunity potentially would have been available for the public's benefit had the defendant not been getting kickbacks from city contractors and had he not awarded the contracts to and through his co-conspirators rather than permitting a genuine competitive bidding process.  Ganim used his power as mayor both for city improvements and for racketeering, extortion and fraud, and positive results do not counterbalance his crimes.  As the Court stated at the sentencing hearing, "we cannot have a sliding scale that punishes those who are good but corrupt less than those that are not as successful and equally corrupt."  Sent. Tr. at 105-06.  Indeed, under Section 3553(a)(2)(A)'s requirement to consider the "seriousness of the criminal offense," the nature of Ganim's corruption of his public office stands out.

As an elected city official, Ganim had a duty to serve the public.  In the sentencing equation, he is entitled to no special credit for his work on behalf of the city, because that is what he was elected and paid to do.  This is not a situation where the defendant's service to the community is entirely separate from his position and therefore could be considered exemplary--for example, an embezzling corporate CEO who feeds the elderly at a nursing home or volunteers at the public library.  Rather, Ganim's service to the community of Bridgeport was exactly what

was expected of him as mayor, and when being sentenced for corrupting that office it is of less import whether the city under his administration made progress toward civic goals.

Thus the Court has considered the record of Bridgeport's achievements under Ganim, and concludes, as before, that any weight to be accorded this factor does not necessitate resentencing.

**B.   Sentencing Enhancements**

Ganim also argues that the Court should resentence him because application of the Guidelines, particularly the loss calculation provisions and the leadership role enhancement, resulted in an overly "mechanistic" sentence. Reply Br. at 8. The Government argues, in contrast, that the enhancements at issue "provide for graduated penalties to reflect nuanced differences in offense conduct." Gov't Response at 5.

The Court holds that the Guidelines enhancements appropriately reflected the nature and circumstances of Ganim's crimes of conviction, under 18 U.S.C. § 3553(a), as well as the need "to promote respect for the law, and to provide just punishment for the offense," id. § 3553(a)(2)(A). As the Court found at the sentencing hearing, Ganim clearly was "an organizer or leader of a criminal activity that involved five or more

participants or was otherwise extensive,"[2] under the meaning of U.S.S.G. § 3B1.1.  See Sent. Tr. at 58.  The evidence at trial showed that Ganim originated the kickback scheme and directed his co-conspirators how to dispose of money collected on his behalf.  He required Pinto and Grimaldi to report back to him regularly the amount of money they received so Ganim could determine how much was designated for him.  When Ganim wanted goods or services, he had Pinto or Grimaldi fill his orders.  With respect to the particular transactions at issue in this case, Ganim instructed Frank Sullivan to deal with Pinto to get a contract, essentially deciding "who got shut out and who got brought in" to manage the city's pensions.  Sent. Tr. at 60.  Additionally, Ganim was the organizer of a fraudulent scheme to get the City of Bridgeport to pay for his life insurance policy.  The evidence amply pointed to the conclusion that the four-level Guidelines enhancement as a leader/organizer appropriately reflected the nature of Ganim's involvement in the racketeering enterprise, as required to be considered under § 3553(a).  It further reflected that Ganim's crimes showed a flagrant disrespect for the law, were extremely serious, and were the type of crimes meriting stiff penalties for the purpose of both individual and general deterrence, as considered under § 3553(b)(2).  Therefore these

---

[2] Indeed, Ganim "was a leader in what has been described as possibly the largest case of political corruption in the history of the State of Connecticut." Presentence Report at ¶ 96.

enhancements are appropriate both under the Guidelines and as considerations under § 3553.

Likewise, the eleven-level enhancement based on the loss amount was an appropriate reflection of the nature and seriousness of Ganim's crimes.  The Presentence Report and the Government had urged the Court to adopt a loss figure exceeding $2 million, while the defendant had urged a figure slightly over $500,000.  Reasonably foreseeable losses of "well over $800,000," Sent. Tr. at 58, are easily accounted for, based on: the outright bribes paid to the defendant, including cash, meals, wine, clothing, jewelry, home furnishings, athletic equipment, and professional services, totaling over $500,000; the 1996 sewer privatization contract with Professional Services Group, worth $311,000, and its extension in 1998-99, worth $313,000; the pension fund contract and kickbacks from Frank Sullivan in the amount of $35,000; and the $100,000 "success fee" paid for relocation of the state juvenile detention facility in Bridgeport.

The applicable Guidelines provided a graduated increase in penalties based on loss amount that allowed the Court to tailor the sentence to reflect the economic harm caused or intended by Ganim's racketeering scheme.  Given the broad range, far reach, and enormous scale of corruption that was illustrated by the evidence presented during the trial, the eleven-level enhancement

properly reflected the economic damage directly caused or intended by Ganim's illegal extortion, bribe-taking and fraud.

Additionally, corruption such as Ganim's causes indirect economic harm by alienating businesses that desire to bid on city contracts but refuse to "pay to play," thereby potentially diminishing the quality and range of facilities and services available to Bridgeport citizens.  Corruption sets a tone that discourages competition and transparency in business, and encourages graft and back-room dealing.  The result is that the public's interest in the economic benefits of competitive bidding and honestly-awarded city contracts takes a back seat or no seat at all.

Most importantly, Ganim's sentence reflected the extraordinary harm done to the political system of the City of Bridgeport and beyond.  Government corruption breeds cynicism and mistrust of elected officials.  It causes the public to disengage from the democratic process because, as the Court stated at sentencing, the public begins to think of politics as "only for the insiders."  Sent. Tr. at 103.  Thus corruption has the potential to shred the delicate fabric of democracy by making the average citizen lose respect and trust in elected officials and give up any hope of participating in government through legitimate channels.

Therefore the Court concludes that the nine-year prison

sentence imposed on Ganim appropriately reflects the nature of the offense, under § 3553(a)(1), as well as the seriousness of the offense, the need for punishment, and especially the objective of individual and general deterrence of similar offenses under § 3553(a)(2).  For these reasons, the Court's sentencing enhancements would not have factored in any differently in the absence of the mandatory Guidelines regime.[3]

### C. Unwarranted Sentencing Disparities

Finally, Ganim argues that the Court should allow him to be resentenced to account for the fact that his sentence was higher than the average sentence nationwide for bribery crimes.  Reply Br. at 12-13 and Exs. A-B.  Defendant's evidence shows that the mean sentence for bribery in 2003 was 9.7 months, and 15.2 months under the post-Booker regime.

The Court is not persuaded that this evidence warrants resentencing.  First, defendant's evidence shows that the average sentence for racketeering/extortion, which more accurately reflects the primary charge against Ganim, was about 6 years.  The average sentence for tax fraud was about 1 year.  Combining

---

[3] The Court is fully aware, as urged by defendant, that after Booker, these sentencing enhancements, as all of the Guidelines, are not mandatory.  See United States v. Ochoa-Suarez, No. 03CR747 (JFK), 2005 WL 287400, at *2 (S.D.N.Y. Feb. 7, 2005).  Nonetheless, the same facts that supported the enhancements also are considered under § 3553(a), with the result that the Court would not impose a materially different sentence even in the absence of the mandatory Guidelines regime.

the offense categories for bribery, racketeering and tax fraud yields at least 8 total years imprisonment for defendants convicted of these crimes, on average.

More importantly, under § 3553(a)(6), the Court must consider "the need to avoid unwarranted sentence disparities <u>among defendants with similar records who have been found guilty of similar conduct</u>."  As the Second Circuit concluded in <u>Fernandez</u>, 443 F.3d at 32, when considering whether a sentencing disparity between co-defendants rendered a Guidelines sentence unreasonable, for any comparison to be meaningful under § 3553(a)(6), the defendants "would have to be similarly situated." Ganim's nationwide statistics do not reflect sentencing for multiple counts, as here.  They also do not statistically break out defendants who were elected public officials.  The statistics do not provide a basis for comparing defendant with similarly-situated defendants.

As the Supreme Court emphasized in <u>Booker</u>, 543 U.S. at 253, "Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity." The Guidelines, although no longer mandatory, if followed in appropriate cases will aid courts in creating uniform sentences for similar crimes.  In Ganim's case, the Court concludes that a sentence within the advisory Guideline range fulfills the goal of preventing unwarranted disparities under § 3553(a)(6).

**D.     Subsequent Events**

Ganim urges the Court to order resentencing so he can present evidence of his subsequent rehabilitation in prison. Under Crosby, 397 F.3d at 118 n. 19, the decision whether to resentence is to be "based solely on the circumstances that existed at the time of the original sentence... ." Thus it is not appropriate to consider what additional information relating to post-sentencing developments the defendant might present at resentencing when deciding whether resentencing is necessary. See United States v. Colon, __ F. Supp. 2d __, No. 03cr175 (JBA), 2005 WL 1097446, at *5 (D. Conn. Apr. 25, 2006). For the reasons detailed above, the Court concludes that Ganim's sentence would not change if he were to be resentenced under the Booker/Fanfan framework, and therefore resentencing is unnecessary.

**E.     United States v. Lake**

Finally, Ganim submitted as supplemental authority the Second Circuit's decision in United States v. Lake, 419 F.3d 111 (2d Cir. 2005). That case is distinguishable primarily because the defendant, convicted of Hobbs Act robbery and conspiracy to commit robbery as well as drug and gun offenses, had preserved his Sixth Amendment Apprendi-Blakely argument, and therefore under United States v. Fagans, 406 F.3d 138, 142 (2d Cir. 2005), he was "entitled to resentencing ... unless the Government c[ould] sustain its burden of proving that the sentencing error

15

was harmless." Lake, 419 F.3d at 113 (emphasis supplied); see also id. at 113 n. 2 (explaining that Crosby procedure applies plain error review to unpreserved Sixth Amendment claims while Fagans applies harmless error review to preserved claims).

Defendant emphasizes the portion of Lake in which the Court of Appeals wrote that "the fact that a judge selects a sentence within a guideline range that the judge thought he was required to apply does not necessarily mean that the same sentence would have been imposed had the judge understood the Guidelines as a whole to be advisory." 419 F.3d at 114. This language only applies to the Second Circuit's review of a sentence on appeal, where the Circuit Court is unsure what the District Court would have done under post-Booker circumstances. It is inapplicable to the present proceeding, where this Court, which imposed the original sentence, is to determine whether the sentence imposed on Ganim actually would have been different were the Guidelines advisory.

## IV.  Conclusion

For the reasons above, the Court concludes that it would not have imposed a materially different sentence on Ganim had it sentenced him with the understanding that the Guidelines were advisory. The Court previously considered fully Ganim's individual history and characteristics and concluded that

Bridgeport's successes during his administration did not outweigh the needs for deterrence and punishment, for the sentence to reflect the seriousness of the offenses of conviction, and for promotion of respect for the law, which goals were already factored into the sentence via the enhancements.  Ganim's sentence is a strong rejoinder to Jonathan Swift's view that "[l]aws are like cobwebs, which may catch small flies, but let wasps and hornets break through."[4]

Accordingly, defendant's request for resentencing [Doc. # 269] is DENIED.

```
                              IT IS SO ORDERED.

                              /s/

                              _____
                              JANET BOND ARTERTON
                              United States District Judge
```

**Dated at New Haven, Connecticut, this 5th day of May, 2006.**

---

[4] Jonathan Swift, <u>A Critical Essay Upon the Faculties of the Mind</u> (1707).

17